**LIBBY WELDING COMPANY, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant,**

and

**John R. Hollingsworth Co., Defendant-Intervenor.**

Civ. A. No. 77–0334.

United States District Court, District of Columbia.

Dec. 19, 1977.

Philip M. Risik, Washington, D. C., for plaintiff.

Dennis Dutterer, Asst. U. S. Atty., Washington, D. C., for defendant.

W. Stanfield Johnson and Dale H. Oliver, Washington, D. C., for defendant-intervenor.

## MEMORANDUM

GASCH, District Judge.

In this action, plaintiff Libby Welding Company ("Libby") seeks injunctive relief setting aside the award of a multi-year contract for the production of diesel generators for the Army. On February 28, 1977, plaintiff's request for a temporary restraining order was denied, and on the next day the government awarded the contract to John R. Hollingsworth Company ("Hollingsworth"). The United States is defendant in this action, and Hollingsworth has intervened as a defendant. Pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure, the Court consolidated the hearing of plaintiff's application for a preliminary injunction with the decision on the merits. Presently before the Court are the parties' cross-motions for summary judgment. For the reasons set forth below, the Court concludes that defendant's and intervenor-defendant's motions for summary judgment should be granted and that plaintiff's motion should be denied.

## FACTUAL BACKGROUND

The material facts are not in dispute. On April 16, 1976, the Defense General Supply Center issued Invitation for Bids DSA 400–76–B–3610 ("IFB–3610"). The IFB was for the procurement of three varieties of generator sets. Alternative bids were requested;

Bid A covered a single-year procurement and Bid B covered a three-year procurement. The original IFB included items 0001–0078, comprising 401 units for the single-year procurement.[1] Specific destinations were listed for most of these items.[2] The solicitation also designated the quantity of units to be furnished during the second and third years of the multi-year procurement,[3] but it did not include line itemizations specifying destinations for these units or providing other detailed information regarding them. The IFB did include, however, a provision for the evaluation of transportation costs for the multi-year procurement.[4] The parties strongly dispute the proper interpretation of this provision.

On June 3, 1976, the IFB was amended to add line items 0079–0115. Items 0079–0082 were additions to the first-year procurement, while items 0083–0115 listed 1053 units for the entire three-year procurement.[5] Itemized destinations were not provided in the amendment for 1006 of the 1053 units constituting the multi-year procurement.[6]

The amendment to the IFB also changed the basis for evaluating preservation, packaging, and packing ("PPP") costs. The original solicitation, incorporating section 2(c) of Standard Form 33A, provided that "the unit price for each unit offered . . . shall include packing unless otherwise specified."[7] As amended, however, Section G of the IFB stated that the unit price for PPP would be "in addition to the unit price specified for the generator set."[8] Moreover, all of the items included in the single-year procurement were specified for either Level A/A or Level B/B PPP. None of the items for the second and third years of the multi-year procurement were given PPP specifications. The June 3 amendment did include a clause, inserted between the amendments to Section E of the IFB and the amendments to Section G, which declared that "all clauses applicable to items 0001–0082 are also applicable to items 0083–0115."[9] The parties disagree about what effect this clause had on the evaluation of PPP costs for the latter two years of the multi-year contract.

Finally, the IFB provided that first article approval and initial production testing would be prerequisites to acceptance of production units by the Government.[10] The Government reserved the option of waiving first article testing for "those offerors offering a product which has been previously furnished and has been accepted by the Government."[11] The solicitation permitted bidders seeking such a waiver to indicate any price reductions resulting from a waiver of the testing.

On June 21, 1976, the bids were opened and Libby and Hollingsworth were the low bidders on a unit price basis. Following the evaluation of additional costs, including transportation and PPP costs, the contracting officer determined that Hollingsworth was the low bidder on the multi-year con-

1. *See* Administrative Record Before the General Accounting Office, at 392–410. The filings submitted by the United States and plaintiff Libby are numbered consecutively and are collectively referred to as the Administrative Record ("Ad.Rec.").

2. Individual destinations were not listed for items 0062–0064. The parties dispute whether the destination designated for item 0061 was intended to apply to the three items following it. *See* discussion at notes 23–24 *infra* and accompanying text.

3. Ad.Rec., at 412.

4. *Id.,* at 391.

5. *Id.,* at 430–435.

6. Items 0083 and 0099, encompassing 1006 units, lacked destination points. *Id.,* at 432, 434.

7. *Id.,* at 428; 32 C.F.R. F–100.33A 2(c) (Armed Services Procurement Regulations). The solicitation also expressly stated that estimated PPP costs would not be considered separately in evaluating bids. Ad.Rec., at 381.

8. *Id.,* at 436.

9. *Id.*

10. *Id.,* at 422–23, 426–27.

11. *Id.,* at 387.

tract.[12] On June 29, 1976, Libby protested to the General Accounting Office ("GAO") the proposed award to Hollingsworth. Libby raised essentially the same contentions presented in this action, and the GAO denied Libby's protest on February 25, 1977.[13] Following award of the contract to Hollingsworth on February 28, 1977, Libby brought this action seeking injunctive relief setting aside the award.

## MERITS

■ In this action, plaintiff Libby sues as a disappointed bidder, seeking to overturn a government contract award allegedly based on prejudicial illegalities in the procurement process. Plaintiff clearly has standing to bring such a suit. *Scanwell Laboratories, Inc. v. Shaffer,* 137 U.S.App. D.C. 371, 424 F.2d 859 (1970). To prevail in its effort to have the Court overturn the contract award, plaintiff has the burden of showing

> either that (1) the procurement official's decisions on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations.

*Kentron Hawaii, Ltd. v. Warner,* 156 U.S. App.D.C. 274, 277, 480 F.2d 1166, 1169 (1973). In its review, the Court should respect the wide discretion given by procurement regulations to contracting officers in their evaluation of bids and applications of regulations. *M. Steinthal & Co. v. Seamans,* 147 U.S.App.D.C. 221, 233, 455 F.2d 1289, 1301 (1971). Moreover, in a case such as the one at bar, the Court should give considerable deference to the conclusions of

the GAO regarding a particular procurement matter. *Wheelabrator Corp. v. Chafee,* 147 U.S.App.D.C. 238, 248–49, 455 F.2d 1306, 1316–17 (1971). Of course, a decision by the GAO is not binding on the Court. *M. Steinthal & Co. v. Seamans, supra,* 147 U.S.App.D.C. at 237, 455 F.2d at 1305.

■ Plaintiff urges that the contracting officer's evaluation of transportation and PPP costs was illegal and prejudicially caused plaintiff to be displaced as the lowest responsible bidder. Plaintiff also claims that the inclusion of the first article waiver clause was prejudicially illegal; and that even if its inclusion was legal, the contracting officer's decision denying plaintiff first article waiver was without any rational basis.[14] Upon consideration of the applicable laws and regulations and the entire record herein, the Court concludes that plaintiff has failed to show that the challenged actions of the contracting officer were either irrational or illegal and clearly prejudicial.

### A. *First Article Waiver.*

In its bid responding to IFB–3610, plaintiff *requested waiver of first article tests.* Plaintiff based its request on the similarity between generators to be supplied under IFB–3610 and generators supplied by plaintiff to the Army under a prior contract (Contract No. DAAK02–72–C–0265). Plaintiff estimated a $450,000 reduction in price to the government resulting from a waiver of first article tests. Plaintiff's request was denied by the contracting officer, however, who based his action on serious production deficiencies under plaintiff's earlier contract and on the fact that IFB–

---

**12.** Hollingsworth was the lower bidder by approximately $34,000. Libby's contention that Hollingsworth was the low bidder by only $3,500 is apparently based on the PPP evaluation most favorable to Libby. *See* Affidavit of George H. Paulini, ¶ 4.

**13.** *See* Comp.Gen. B–186395 (February 25, 1977).

**14.** Plaintiff also claims that the award of the contract at issue in this case breached a previ-

ous contract that plaintiff had with the Government (Contract No. DAAK02–72–C–0265). Complaint, ¶¶ 15–17. Plaintiff seeks injunctive relief based on a breach of contract claim most probably exceeding $10,000.00. The Court, therefore, concludes that, under the Court of Appeals' decision in *International Engineering Co., Division of A–T–O, Inc. v. Richardson,* 167 U.S.App.D.C. 396, 400, 403, 512 F.2d 573, 577, 580 (1975), plaintiff's breach of contract claim is not maintainable in this court.

3610 was a first-time buy on a new military specification.[15]

Plaintiff's primary argument regarding first article waiver is that inclusion of the waiver clause in the solicitation was illegal. Plaintiff relies on a procurement regulation that provides that first article waiver provisions are inapplicable "[w]hen it is known that first article approval will be required of all bidders or offerors." 32 C.F.R. § 1.1903(b) (1976) (Armed Services Procurement Regulations). Plaintiff contends that the Government knew, or should have known, that none of the bidders would be granted first article waiver. Plaintiff argues that the Government knew of the facts underlying its refusal of first article waiver for plaintiff prior to the issuance of the solicitation.[16]

The Court cannot accept plaintiff's argument; even assuming that the waiver clause was improperly included in the solicitation, plaintiff has not shown that it was prejudiced by this error. Plaintiff claims that if the waiver clause had not been in the solicitation, plaintiff would have otherwise structured its bid to underbid its competitors by a significant margin. This general allegation by itself is insufficient to satisfy plaintiff's burden of showing clear prejudice.[17] Plaintiff has not specified how or for what reason it would have changed its bid if the waiver clause had not been in the solicitation. Moreover, it is undisputed that plaintiff submitted alternative bids depending on whether first article tests would be waived. After the contracting officer decided not to grant a waiver to plaintiff, plaintiff's alternative bid containing first

article costs was considered equally with the other submissions. The record shows that plaintiff was in fact not prejudiced by the waiver clause's inclusion in the solicitation.

Plaintiff's prejudice argument also fails because it is based on the erroneous premise that plaintiff's request for a waiver of first article costs entitled it to receive such a waiver. Plaintiff claims that it was prejudiced by having relied on the waiver clause in structuring its bid. Plaintiff asserts that it would have sufficiently lowered its bid to win the award if the waiver clause had not been included in the solicitation. Implicit in plaintiff's argument, however, is the fact that plaintiff submitted its bid on the assumption that it would receive first article waiver. Plaintiff's reliance on the clause for this assumption was entirely misplaced; the waiver provision makes clear that the decision to waive first article testing is discretionary with the Government.[18] See *Met-Pro Water Treatment Corp.*, 54 Comp. Gen. 39 (1974). Plaintiff was prejudiced by its own misplaced reliance on the waiver clause and not by the mere inclusion of the clause in the solicitation. To accept plaintiff's claim of prejudice would allow plaintiff to benefit from its unreasonable reliance on the placement of the waiver clause in IFB–3610.

Plaintiff next argues that the contracting officer acted arbitrarily and unreasonably in deciding that first article testing should not be waived for plaintiff. The GAO concluded, after reviewing extensive evidence, and the Court agrees, that the

---

**15.** Affidavit of George Paulini, ¶ 2(c).

**16.** *See* Statement of Points and Authorities of Plaintiff in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment ("Plaintiff's Points and Authorities"), at 48–49. Plaintiff also asserts that the Department of Defense Project Manager for Electrical Power Equipment had a firm policy, in effect before the issuance of IFB–3610, against waiving first article tests. *See* Affidavit of James Brettell, at ¶ 37.

**17.** When procurement statutes or regulations have been violated, prejudice to the complaining party from the violation is not presumed. This principle was expressed clearly by the Court of Appeals for this circuit in *Kentron Hawaii, Ltd. v. Warner*, 156 U.S.App.D.C. 274, 289, 480 F.2d 1166, 1181 (1973) ("One complaining of procedural irregularity in the procurement process must first show that the alleged error *at least potentially* affected the substantive result.").

**18.** The waiver provision states that the Government "reserves the right" to waive the requirement for first article testing. Ad.Rec., at 387.

contracting officer did not abuse his discretion in denying waiver for plaintiff. The contracting officer based his decision on the recommendation of the United States Army Troop Support Command ("TROSCOM"), the requiring activity for both IFB-3610 and plaintiff's earlier contract.[19] Despite plaintiff's contentions otherwise, and as the December 17, 1976, report by TROSCOM makes clear, major problems observed during initial production testing under plaintiff's earlier contract remained unresolved.[20] In view of these problems and TROSCOM's consistent recommendation against waiver for plaintiff, the Court cannot conclude that the contracting officer's decision was without any rational basis.

■ Plaintiff nevertheless contends that the contracting officer acted arbitrarily because he should not have considered failures in initial production testing for the generators under the prior contract in determining whether to waive first article preproduction tests under IFB-3610.[21] The Court disagrees. The Court can find nothing in the applicable procurement regulations indicating that failures in initial production testing under a prior contract are an impermissible factor in determining whether to waive preproduction tests.[22] Indeed, the existence of quality deficiencies under the prior contract, regardless of whether they were discovered during preproduction or initial production testing, is certainly a factor that reasonably should be considered when determining whether to waive either type of testing for a later contract. Clearly, the contracting officer's consideration of this factor cannot be deemed arbitrary and capricious.

**B. Evaluation of Transportation Costs.**

■ Plaintiff raises two objections to the contracting officer's evaluation of transportation costs. First of all, plaintiff contends that the transportation costs for items 0062–0064 were erroneously evaluated to New Cumberland, Pennsylvania. Specific destinations were not listed for these items, but the contracting officer concluded that the destination listed for item 0061 (i. e., New Cumberland) applied to items 0062–0064. He reached this conclusion because the MIPR (Military Interdepartmental Purchase Request) number for item 0061, which is positioned directly above the designated destination for this item, was adjoined by the parenthetical reference "Items 0061–0064."[23]

Plaintiff argues that the parenthetical reference referred only to the MIPR number and therefore that transportation costs should not have been evaluated for items 0062–0064. Plaintiff attempts to justify this interpretation by arguing that earlier instances of consecutive items with the same MIPR number and destination were designated differently than items 0061–0064. In fact, however, numbers 0061–0064 represent the only group of items in the solicitation with completely identical descriptions for each item.[24] Moreover, the obvious meaning of the description given these items is that the specifications for item 0061 apply in toto to the three items following it. The contracting officer's evaluation of transportation costs for items 0062–0064 to New Cumberland was reasonable and proper.

■ Plaintiff's second objection regarding transportation costs focuses on the eval-

**19.** Affidavit of George Paulini, ¶ 2(c).

**20.** Ad.Rec., at 578–79.

**21.** Although first article approval testing generally encompasses both initial production and preproduction testing, its usage in IFB-3610 was limited to preproduction testing. See Ad. Rec., at 389, 422–23, 426–27.

**22.** See 32 C.F.R. § 1–1901 (1976); Army Regulation No. 700–78.

**23.** Ad.Rec., at 409.

**24.** Items 0002–0005 have completely identical specifications, but they were described differently than items 0061–0064 because they are part of a larger grouping with the same MIPR number but different destinations. Id., at 392–94. Plaintiff's reference to items 0013–0015 is also inapposite because these items do not have completely identical specifications. Id., at 396.

uation of these costs for the second and third year units of the multi-year procurement. Although destinations were not itemized for these units, the contracting officer evaluated transportation costs for them based on destinations provided in a bid evaluation clause in Section D of the solicitation.[25] Plaintiff suggests that the contracting officer should not have evaluated transportation costs at all for the latter two years of the multi-year bid. Plaintiff argues that the bid evaluation clause and the destinations included therein were only intended for use by the Government in determining whether Bid A (single-year procurement) or Bid B (multi-year) would be most advantageous. Plaintiff urges that the contracting officer misapplied the clause in using its listed destinations for determining the lowest multi-year bid.

The Court is not persuaded by plaintiff's contentions. Despite plaintiff's suggestion that transportation costs should not have been evaluated for the second and third years, the solicitation in no way indicates that these transportation costs would not be evaluated. When such costs are not to be included in the evaluation, specific uniform contract clauses must be included, stating that transportation costs will not be evaluated, and a specific justification for the failure to include such costs must be made. See 32 C.F.R. §§ 7–2003.70, 19–208.4(b) (1975). None of these procedures were followed in this case. To the contrary, the

pertinent provisions in the solicitation indicate that transportation costs are to be evaluated.[26] Thus, had the contracting officer not evaluated transportation costs, he would have violated both the solicitation's clear intent and the regulations.

■ Furthermore, the contracting officer's method for evaluating transportation costs for the multi-year bids was proper. In evaluating each Bid B, the contracting officer added the transportation costs for each Bid A to the costs for transportation for the quantities and destinations given in the evaluation clause in Section D.[27] As plaintiff emphasizes, this clause does specifically describe the method for choosing between the first-year and multi-year procurement. Plaintiff ignores, however, that the clause contains nothing prohibiting its use for determining the lowest multi-year bid. Given the clear intent of the solicitation that transportation costs be evaluated for the multi-year bids, and the fact that the evaluation clause contains the destinations provided in the solicitation for the latter two years of the multi-year bid, the contracting officer's reliance on these destinations for evaluating the multi-year bids was both logical and foreseeable.[28] It would make little sense for the government to have adopted one measure when comparing transportation costs for the multi-year bids and use a totally different measure when comparing such costs for the lowest first-year bid to the lowest multi-year bid.

25. *Id.*, at 391.

26. *See, e. g., Id.*, at 388, 420.

27. The clause provides in part:
OFFER 'B' WILL BE EVALUATED BY UTILIZING THE PRICES EVALUATED (BID B) TO THE DESTINATIONS FOR THE QUANTITIES SET FORTH FOR BID 'A', TOGETHER WITH THE ADDITIONAL EVALUATION FACTORS . . . FOR THE ADDITIONAL QUANTITIES REPRESENTING THE SECOND AND THIRD YEAR REQUIREMENTS UTILIZED IN THE EVALUATION OF BID 'A'.

28. The contracting officer's use of these destinations is not inconsistent with the partial listing of destinations for items 0083–0115, which comprise all the units for the multi-year procurement. Itemized destinations were provided for only 47 of the 1053 units of the multi-

year procurement. It is unclear why destinations were provided for these units, but close examination reveals that all of these units are part of the first year of the multi-year procurement. Compare, for example, items 0084 and 0085 with items 0006 and 0007, respectively. Ad.Rec., at 393–94, 432. Thus, the 1006 units lacking itemized destinations include all of the units from the second and third years and part of the units from the first year. Exact destinations for all of these units were provided, however, in the evaluation clause in Section D (for the multi-year units) and in the itemizations in the unamended solicitation (for the first-year units). Plaintiff's suggestion that these 1006 units be evaluated on the basis of shipment to St. Louis and Aberdeen is illogical and inconsistent with the other provisions in the solicitation.

■ Plaintiff raises a final objection to the evaluation of transportation costs. The evaluation clause in Section D provided that the destinations listed therein were intended "for evaluation purposes only." Apparently, these destinations represent the best estimates that could be developed for the second and third year of the multi-year contract. Plaintiff alleges a violation of certain procurement regulations requiring that a specific clause must be checked as applicable when estimated destinations are being used.[29] 32 C.F.R. § 1–322.3(d), 2–201(a)D(vii) (1976). This argument fails because plaintiff has not shown any prejudice to it even if the contracting officer improperly neglected to mark this clause. The unambiguous intent of the solicitation was that the destinations in the evaluation clause, whether estimated or actual, would be used for evaluating between multi-year bids. Moreover, the evaluation clause expressly warns that the destinations are for evaluation purposes only.[30]

In challenging the evaluation of transportation costs, plaintiff has alleged violations of regulations and has offered various alternative evaluation approaches. These arguments fail for a basic reason. They do not overcome the fact that a reasonable reading of the solicitation shows that the contracting officer evaluated transportation costs in a manner consistent with the solicitation's clear intent and meaning.

## C. Evaluation of Preservation, Packaging, and Packing ("PPP") Costs.

■ Plaintiff challenges the contracting officer's evaluation of PPP costs on two grounds. First of all, plaintiff argues that PPP costs should not have been evaluated for the multi-year bid. The amended solicitation clearly provided that the unit price for PPP would be considered in addition to, and not a part of, the unit price for each generator set.[31] Plaintiff contends that the clause providing for evaluation of PPP costs applied to the first-year procurement and not to the multi-year procurement. The contracting officer evaluated PPP costs for the multi-year bids, relying on a provision in the June 3, 1976, amendment, stating that "all clauses applicable to items 0001–0082 [single-year items] are also applicable to items 0083–0115 [multi-year items].[32] Plaintiff, claiming that the contracting officer erred, argues that the foregoing provision referred only to clauses in Section E of the solicitation and not to the amendment to Section G for the evaluation of PPP costs. The GAO rejected plaintiff's position, and the Court agrees with the GAO's conclusion.

In support of its interpretation of this phrase regarding application of clauses in the solicitation to the multi-year items, plaintiff focuses on the phrase's location. Plaintiff emphasizes that the phrase follows Section E and precedes Section G and therefore should not be considered a part of Section G. In fact, the phrase appears to be part of neither Section E nor Section G. More importantly, the phrase's position is irrelevant because its meaning is clear on its face. It simply provides that any clause in the solicitation applicable to the single-year items is applicable also to the multi-year items. Despite plaintiff's argument to

---

**29.** Plaintiff refers to clause D 18. Ad.Rec., at 390. By its own terms, the clause is inapplicable because the estimated destinations were listed in Section D and not Section E.

**30.** Plaintiff also objects that the contract should have been solicited only on an F.O.B. origin basis because estimated destinations were being used. See 32 C.F.R. § 19–208.4(a) (1975). Plaintiff itself bid only on an F.O.B. origin, however, and therefore has suffered no prejudice from any such error by the Government.

**31.** See note 8 supra and accompanying text. Plaintiff suggests that the amendment did not alter the provisions in the original solicitation stating that PPP costs would not be evaluated. See note 7 supra and accompanying text. The amendment to Section G, however, expressly provides that PPP costs would be considered separately from the unit price for each generator; and it must be understood as nullifying any provisions to the contrary in the original solicitation.

**32.** Ad.Rec., at 436.

the contrary,[33] the phrase is not limited in its application to clauses in Section E that apply *exclusively* to first-year items. Such an interpretation is not supported by the express wording of the phrase. Moreover, given such an interpretation, the phrase would apply at most to one clause and would hardly have been necessary.[34] In straining to find support for its position, plaintiff has complicated the phrase's purpose. The phrase reasonably applies to clauses throughout the solicitation and is merely intended as a statement confirming that all clauses in the solicitation generally applicable to first-year units are also applicable to multi-year units. The contracting officer properly relied on the phrase in applying to the multi-year bids the clause mandating evaluation of PPP costs. Plaintiff's argument that PPP costs should not have been evaluated for the multi-year bid is inconsistent with the terms of the solicitation.

Plaintiff challenges the contracting officer's evaluation of PPP costs on an additional ground. The amended solicitation, while providing PPP specifications for single-year units, does not provide such specifications for the multi-year units.[35] Without these specifications, the IFB violated the procurement regulations requiring that solicitations must state the "exact basis upon which bids will be evaluated and award made." 32 C.F.R. § 2–201(a)D(i) (1976). This violation does not warrant overturning the contract award, however, unless it is prejudicial to plaintiff, *Kentron Hawaii, Ltd. v. Warner*, 156 U.S.App.D.C. at 289, 480 F.2d at 1181; and the contracting officer's actions in evaluating the PPP costs for the multi-year bid show that the lack of specificity in the solicitation was not prejudicial in this instance.

The contracting officer, upon properly concluding that PPP costs should be evalu-

ated for the multi-year bids, made several computations regarding the second and third year requirements of the multi-year bid.[36] Extrapolating from the specifications for Level B/B and Level A/A packaging for the single-year units, the officer considered various combinations of Level B/B and Level A/A for the quantities required in the last two years of the multi-year bid. The officer then added the costs for these combinations to the costs for PPP in the first year of the multi-year bid. Under the combination most favorable to the plaintiff—if all packaging for the second and third years was Level B/B—Hollingsworth would still be the low bidder by approximately $3,500.00.[37] Thus, the contracting officer correctly concluded that the lack of specificity in the second and third year PPP requirements for the multi-year bid was not prejudicial to the plaintiff. Accordingly, neither award to the plaintiff nor cancellation of the solicitation is justified.

Defendant and intervenor's motion for summary judgment is granted and plaintiff's motion is denied.

---

**33.** *See* Plaintiff's Points and Authorities, at 26.

**34.** Plaintiff apparently views the phrase as applying only to clause E 5, concerning production progress reports. Ad.Rec., at 414. No other clause in Section E applies exclusively to first-year items.

**35.** Ad.Rec., at 436.

**36.** Affidavit of George Paulini, ¶ 4.

